UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| HELDER RAMIREZ, <br><br> Plaintiff, <br><br> v. <br><br> IDD CARS, LLC, *et al.* <br><br> Defendants. | No. 23-CV-5716 (KMK) <br><br> OPINION & ORDER[*] |

Appearances:

Novlette R. Kidd, Esq.
Kidd Law Group PLLC
New York, NY
*Counsel for Plaintiff*

Michael Gould, Esq.
Rick C. Kim, Esq.
Stevan Labonte, Esq.
Labonte Law Group, PLLC
Jericho, NY
*Counsel for Defendant IDD Cars, LLC*

Brian S. Gitnik, Esq.
Gordon Rees Scully Mansukhani LLP
New York, NY
*Counsel for Defendant American Heritage Federal Credit Union*

KENNETH M. KARAS, United States District Judge:

Helder Ramirez ("Plaintiff"), brings this Action against IDD Cars, LLC d/b/a

Volkswagen of Nanuet ("IDD") and American Heritage Federal Credit Union ("AHFCU")

(collectively, "Defendants"), asserting violations of the Magnuson-Moss Warranty Act

---

[*] Pursuant to Fed. R. Civ. P. 60(a) and the Parties' Joint Motion (Dkt. No. 97), the Court has amended this Opinion to correct a clerical error on page 35.

("MMWA") 15 U.S.C. § 2301 et seq.; the N.Y. U.C.C. ("NY UCC") §§ 2-312, 2-314; N.Y. General Business Law ("NYGBL") § 349; common law fraud; conversion; unjust enrichment; violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") 73 P.S. § 201-1, et seq.; and seeking declaratory relief pursuant to 28 U.S.C. § 2201(a). (*See* Compl. ¶¶ 398–517 (Dkt. No. 1).)[1] Before the Court are Defendants' Motions for and Plaintiff's Partial Cross-Motion for Summary Judgment (collectively, the "Motions"). (*See* AHFCU Not. of Mot. (Dkt. No. 62); IDD Not. of Mot. (Dkt. No. 63); Pl. Not. of Mot. (Dkt. No. 64).)

For the following reasons, the Court grants each Motion in part and denies each in part.

I. Background

A. Factual Background

The following facts are taken from the Parties' statements pursuant to Local Civil Rule 56.1, (*see generally* AHFCU Mem. in Supp. of Mot. for Summ. J. ("AHFCU Mem.") 6–10 (Dkt. No. 62-2); IDD 56.1 Statement (Dkt. No. 63-9); Pl. 56.1 (Dkt. No. 66); Pl.-AHFCU Rep. 56.1 (Dkt. No. 78); Pl.-AHFCU Counter 56.1 (Dkt. No. 78); Pl.-IDD Rep. 56.1 and Pl.-IDD Counter

---

[1] In general, the Court cites to the ECF-stamped page number in the upper righthand corner of each page. However, insofar as it cites to various court transcripts, the Court cites to the internal page and line numbers.

56.1 (Dkt. No. 81); IDD Rep. 56.1 (Dkt. No. 69)),[2,3] or to admissible evidence submitted by the

Parties.[4]

_____

[2] For the sake of clarity, the Court will refer to Plaintiff's response to AHFCU's 56.1 Statement (Dkt. No. 78, p. 1–7) as "Pl-AHFCU Rep. 56.1" and Plaintiff's Statement of Additional Material Facts (Dkt. No. 78, p. 7–23) as "Pl-AHFCU Counter 56.1." The Court will refer to Plaintiff's response to IDD Cars' 56.1 Statement (Dkt. No. 81, p. 1–4) as "Pl.-IDD Rep. 56.1" and Plaintiff's Statement of Additional Material Facts (Dkt. No. 81, p. 4–14) as "Pl.-IDD Counter 56.1." The Court will refer to IDD's Opposition to Plaintiff's Motion for Summary Judgment (Dkt. No. 69, p. 1–8) as "IDD Opp." and IDD Reply 56.1 (Dkt. No. 69, p. 9–17) as "IDD Rep. 56.1."

[3] Plaintiff's response to AHFCU's 56.1 Statement does not include numbered paragraphs, so the Court will reference the relevant page numbers when citing to it. (*See generally* Pl-AHFCU Rep. 56.1.)

[4] Defendants' Statements of material fact repeatedly fail to comply with Local Rule 56.1's requirements. First, AHFCU failed to annex a "a *separate*, short and concise statement, in *numbered* paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a) (emphases added). Instead, AHFCU appears to have incorporated its Statement of Material Facts into the Memorandum accompanying its Motion, thereby failing to provide a separate, numbered statement of material fact. (*See* AHFCU Mem. In Supp. of Mot. ("AHFCU Mem.") 6–10 (Dkt. No. 62-2).) Furthermore, Rule 56.1 specifies that each statement of material fact must be supported by a "citation to evidence which would be admissible." Local Rule 56.1(d). The bulk of AHFCU's statement of fact cites to Plaintiff's Complaint. (*See* AHFCU Mem. 6–10.) However, "a complaint is inadmissible hearsay and cannot be properly cited for the truth of its contents in a 56.1 Statement." *Brown v. City of New York*, No. 16-CV-1919, 2018 WL 3821620, at *6 (S.D.N.Y. Aug. 10, 2018); *see also Mayo-Coleman v. Am. Sugar Holdings, Inc.*, No. 14-CV-79, 2017 WL 9538162, at *9 (S.D.N.Y. May 5, 2017) ("An unverified amended complaint is not admissible evidence and unsubstantiated allegations contained therein cannot support the defendants' Rule 56.1 statement on the summary judgment motion."), *report and recommendation adopted in relevant part sub nom. Mayo-Coleman v. Am. Sugars Holding, Inc.*, No. 14-CV-79, 2017 WL 4157379 (S.D.N.Y. Sept. 18, 2017). Therefore, the Court disregards AHFCU's statement to the extent it relies on inadmissible evidence.

Similarly, Defendant IDD's 56.1 statement fails—at myriad points—to support IDD's claims with "citation[s] to evidence that would be admissible." Local Rule 56.1(d). Where this is the case, the Court will deem the Plaintiff's facts admitted. *See Al Thani v. Hanke*, No. 20-CV-4765, 2024 WL 4265196, at *3 n.1 (S.D.N.Y. Sept. 23, 2024) (deeming facts admitted where the defendants failed to submit "counterstatements followed by citation to evidence which would be admissible" and collecting cases (internal citations and quotation marks omitted)). "[T]he Court has confirmed that each fact asserted in [Defendants' and Plaintiff's] Rule 56.1

In August 2021, IDD acquired possession of a 2014 Honda Civic. (*See* Pl. 56.1 ¶ 4; IDD Rep. 56.1 ¶ 4.) On October 7, 2021, Plaintiff purchased the Vehicle from IDD. (*See* Pl. 56.1 ¶ 7; IDD Rep. 56.1 ¶ 7.) As part of the purchase, IDD charged Plaintiff the New York, rather than Pennsylvania, tax rate. (Pl. 56.1 ¶¶ 30–32; IDD Rep. 56.1 ¶¶ 30–32.) To date, IDD has failed to return this sum. (Pl. 56.1 ¶¶ 32; IDD Rep. 56.1 ¶¶ 32.) Plaintiff also avers that he was charged a $175 documentation fee and a $335 "license and title fee" in connection with the sale, (*see* First Decl. of Helder Ramirez ("First Ramirez Decl.") ¶¶ 13–14 (Dkt. No. 67)), and that he never received a MV-50 Certificate of Sale, New York State Lemon Law Warranty, New York State Lemon Law Bill of Rights or certificate of title to the vehicle from IDD, (*see id*. ¶¶ 46–50).

When he obtained the loan, Plaintiff avers that an AHFCU's employee, Stacy, sold Plaintiff the "extended warranty" and a Guarantee Asset Protection ("GAP") contract. (*See* First

---

statements that is relied upon in this Opinion and Order is supported by its corresponding citation to the record. The Court otherwise cites directly to the record." *Id.*

Finally, IDD's Counter 56.1 Statement also fails to comply with the requirement that 56.1(b) statements must "be followed by citation to evidence which would be admissible." Local Rule 56.1(d). (*See* IDD Rep. 56.1 ¶¶ 1–32 (Dkt. No. 69).) At several points, in response to Plaintiff's statement of facts, IDD simply denies Plaintiff's assertion without reference to any admissible evidence. The Court deems those facts admitted. *See Cyr v. Csaa Fire & Cas. Ins. Co.*, No. 16-CV-85, 2018 WL 7508689, at *1 (D. Conn. Jan. 29, 2018) ("To the extent that the [plaintiff's] factual assertions are properly supported by the evidence and the [defendant's] denials fail to provide specific citations to evidence that supports those denials, the Court will deem those assertions admitted.").

Furthermore, at several other points, IDD states that it "denies knowledge or information sufficient to deny or admit." (*See, e.g.,* IDD Rep. 56.1 ¶¶ 8, 11, 13, 14, 18, 21, 22.) "A properly asserted fact is not considered disputed if a party states that it does not have knowledge sufficient to respond to the opposing party's asserted statement of material fact." *Lichtman v. Chase Bank USA, N.A.*, No. 18-CV-10960, 2020 WL 1989486, at *1 n.1 (S.D.N.Y. Apr. 27, 2020). Therefore, the Court considers those facts admitted.

Ramirez Decl. ¶ 34.) Plaintiff also avers that Stacy told him that he was required to make payments via autopay. (First Ramirez Decl. ¶¶ 35–36; Pl.-AHFCU Counter 56.1 ¶¶ 94–95.)

IDD did not have physical possession of the certificate of title at the time of Plaintiff's purchase. (*See* Pl. 56.1 ¶ 8; IDD Rep. 56.1 ¶ 8; First Decl. of Novelette Kidd ("First Kidd Decl.") Ex. 2 ("Pl.-IDD RFA") (Dkt. No. 68-2).)[5] Furthermore, IDD admits that it did not have title to the Vehicle at the time of its sale to Plaintiff. (*See* Pl.-IDD RFA ¶ 23.) In fact, IDD did not come into possession of the certificate of title until January 19, 2022. (*See* Pl. 56.1 ¶ 14; IDD Rep. 56.1 ¶ 14; First Kidd Decl., Ex. 4 ("Title Information") 2 (Dkt. No. 68-4).)

Plaintiff received temporary registration for the Vehicle on October 7, 2021. (*See* First Ramirez Decl. ¶ 44.) According to Plaintiff, his temporary registration expired on November 2, 2021, at which point he had not received his permanent certificate of registration and therefore could not legally drive the Vehicle. (*See id*. at ¶¶ 64–73; Pl.-IDD Counter 56.1 ¶¶ 12, 19–21; IDD Rep. 56.1 ¶¶ 12, 19.) Plaintiff claims he consequently ceased driving the Vehicle after November 2, 2021. (*See* First Ramirez Decl. ¶ 73.) Further, Plaintiff claims that after November 2, 2021, he repeatedly contacted IDD and AHFCU about the fact that he had yet to receive his

---

[5] IDD did not respond to Plaintiff's Request for Admission ("RFA") pursuant to Federal Rule of Civil Procedure ("Rule") 36. Under Rule 36(a)(3), a "matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3); *see also MS Elmsford Snack Mart, Inc. v. Weil*, No. 14-CV-2226, 2018 WL 1281829, at *6 (S.D.N.Y. Mar. 5, 2018) ("The Court finds that [Defendant's] failure to respond to the RFA is unexcused and, thus, the appropriate portions of the RFA are admitted." (footnote omitted)). Here, Plaintiff has provided evidence suggesting that IDD was given nearly 60 days to respond to his RFA, and failed to do so, and further failed to provide any explanation as to its unwillingness to do so. (*See* Pl.-IDD RFA 2; *see generally* Dkt.) Therefore, the Court deems the statements in the RFA admitted to the extent they do not amount to legal conclusions.

permanent registration and was thus unable to drive the car legally.  (*See* First Ramirez Decl. ¶¶ 74–79, 83, 88–97; Second Decl. of Kidd Ramirez ("Second Kidd Decl."), Ex. 9 ("Loan Notes") 2–4 (Dkt. No. 77-9).)

Plaintiff claims that on November 22, 2021, IDD Dealership manager Fred Eldik told Plaintiff that IDD had yet to obtain the existing title for the Vehicle.  (*See* First Ramirez Decl.¶¶ 89–90.)  On December 1, 2021, Plaintiff alleges another IDD employee told him that IDD "definitely did not in fact ever have the title and still did not have the title, and that the Vehicle could not be titled or registered in Pennsylvania without the existing title."  (*Id*. ¶ 102.) Plaintiff avers that he then asked IDD to unwind his purchase of the Vehicle, which IDD refused. (*See id*. ¶¶ 103–106.)  On the same day, Plaintiff asserts that he contacted AHFCU and requested that they "help extract [Plaintiff]" and that he "desired to cancel the purchase of the Vehicle and cancel the loan," and that two of AHFCU's employees refused his request.  (*See id*. ¶¶ 107–112.)

Plaintiff alleges on December 2, 2021, as a result of these events, he was obligated to purchase a replacement vehicle that was "five years older than the [original] Vehicle" because "the presence of the AHFCU account on [his] credit report consumed much of [his] debt-to income ratio and prevented [him] from obtaining a loan in an amount large enough for [him] to buy a newer [,] more dependable car."  (*See* First Ramirez Decl. ¶ 145.)  On February 24 or 25, 2022, AFHCU repossessed the Vehicle and reported the repossession to the major credit bureaus. (*See id*. ¶¶ 165–167; Hutchins Dep. 111:19–25 (Dkt. No. 62-5).)

B.  Procedural Background

On July 4, 2023, Plaintiff filed the Complaint.  (*See* Compl.)  Discovery closed on September 3, 2024.  (*See* Dkt. No. 55.)  Following pre-motion letters in which the Parties

requested leave to file cross-motions for summary judgment, (*see* Dkt. Nos. 56–61), the Court set a briefing schedule, (*see* October 9, 2024 Minute Entry).

AHFCU submitted its Motion for Summary Judgment on November 15, 2024. (*See generally* AHFCU Mot.; AHFCU Mem.) On December 20, 2024, Plaintiff filed his Opposition, (*see generally* Pl. Mem. In Opp. to AHFCU Mot. ("Pl.-AHFCU Opp.") (Dkt. No. 74)); Second Decl. of Helder Ramirez ("Second Ramirez Decl.") (Dkt. No. 72)), and on December 23 and 24, 2024, Plaintiff filed additional Opposition papers, (*see* Second Decl. of Novelette R. Kidd ("Second Kidd Decl.") (Dkt. No. 77); Pl.-AHFCU Rep. 56.1; Pl.-AHFCU Counter 56.1.) AHFCU filed its Reply and accompanying papers on May 9, 2025. (*See generally* AFHCU Rep. in Supp. Mot. for Summ. J. ("AHFCU Rep.") (Dkt. No. 88).)

IDD submitted its Motion for Summary Judgment on November 15, 2024. (*See generally* IDD Mot.; IDD Mem. in Supp. of Mot. for Summ. J. ("IDD Mem.") (Dkt. No. 63-2); IDD 56.1.) After some delay, (*see* Dkt. Nos. 73, 75, 76), and a request for extension, (*see* Dkt. No. 79), the Court granted the Parties an extension of the briefing deadlines, (*see* Dkt. No. 83). On December 24, and 25 2024, Plaintiff filed his Opposition and accompanying papers. (*See* Pl.-IDD Rep. 56.1; Pl.-IDD Counter 56.1; Pl. Mem. in Opp. to IDD's Mot. for Summ J. ("Pl.-IDD Opp.") (Dkt. No. 82).) IDD filed its Reply on January 31, 2025. (*See* IDD Rep. Mem. in Supp. of Mot. Summ. J. ("IDD Rep.") (Dkt. No. 86).)

Plaintiff moved for partial summary judgment on some of his claims against IDD on November 16, 2024. (*See* Pl. Mot.) Plaintiff filed his Memorandum of Law and other supporting papers on November 18, 2024. (*See* Pl. Mem. in Supp. Mot. for Summ. J. ("Pl. Mem.") (Dkt. No. 65); Pl. 56.1; First Ramirez Decl.) On November 19, 2024, Plaintiff filed additional supporting papers. (*See* First Kidd Decl.) On December 18, 2024, IDD filed its

7

Opposition.  (*See* IDD Mem. in Opp. Pl. Mot. for Summ. J. ("IDD Opp.") (Dkt. No. 69).)  On

January 8, 2025, Plaintiff filed his reply.  (*See* Pl. Rep. Mem. in Support Mot. Summ. J. ("Pl.

Rep.") (Dkt. No. 85).)

On April 25, 2025, the Court ordered the Parties to provide supplemental briefing on the

applicability of the jurisdictional requirements of the MMWA.  (*See* Dkt. No. 87.)  On May 9,

2025, the Parties filed the requested briefing.  (*See* Dkt. Nos. 88–90.)  On May 15, 2025, Plaintiff

filed a letter alerting the Court to additional authority in support of his Motion.  (*See* Dkt. No.

91.)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same); *Psihoyos v.

John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In deciding whether to

award summary judgment, the court must construe the record evidence in the light most

favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia v.

Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240

(2d Cir. 2021) (same).  "It is the movant's burden to show that no genuine factual dispute exists."

*Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red

Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4

(S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it

ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an

essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration adopted, citation and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Laby's. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323–24).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419–21 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

B. Analysis

   1. IDD

Plaintiff seeks a partial grant of summary judgment on his claims against IDD. Specifically, Plaintiff moves for summary judgment as to his warranty of title, merchantability, and MMWA claims, as well as some of its allegations of violations of the NY GBL § 349.[6] (*See*

---

[6] Plaintiff also appears to argue that he is entitled to summary judgment under New York's Vehicle and Traffic Law ("VTL") § 417. (*See* Pl. Mem. 14–15.) However, in his Complaint, Plaintiff did not allege a violation of VTL § 417. (*See generally* Compl.) "[T]he court cannot grant summary judgment on a claim not pled." *Precision Trenchless, LLC v. Saertex multiCom LP*, No. 19-CV-54, 2021 WL 4310668, at *14 (D. Conn. Sept. 22, 2021); *see also EMA Fin., LLC v. NFusz, Inc.*, 509 F. Supp. 3d 18, 32 (S.D.N.Y. 2020) ("It is axiomatic that

*generally* Pl. Mem.)  IDD moves for summary judgment on each of Plaintiff's claims against it.

(*See* IDD Mem.)  For the following reasons, the Court grants each Motion in part and denies

each in part.

  a. MMWA[7]

  The MMWA, "also known as the federal 'lemon law,'" *Pyskaty v. Wide World of Cars,*

*LLC*, 856 F.3d 216, 222 (2d Cir. 2017), permits plaintiffs to obtain relief "premised on violations

---

an unpled claim cannot be the predicate for a summary judgment motion.").  The Court therefore
denies Plaintiff's Motion as to this cause of action.

  [7] "[F]ederal court jurisdiction under the MMWA is restricted to those suits that can
satisfy two relevant elements: (1) the amount in controversy of any individual claim must be at
least $25; and (2) the overall amount in controversy must be at least $50,000, excluding interest
and costs." *Favata, v. JD Motors of CNY, LTD*, No. 23-CV-1549, 2025 WL 1649045, at *10
(N.D.N.Y. June 11, 2025) (alterations adopted) (quoting *Pierre v. Planet Auto., Inc.*, 193 F.
Supp. 3d 157, 169 (E.D.N.Y. 2016)).  In evaluating whether a plaintiff meets the amount in
controversy requirement under the MMWA, the Second Circuit "recognize[s] a rebuttable
presumption that the face of the complaint is a good faith representation of the actual amount in
controversy." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) (quoting
*Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006)).  This
presumption can be rebutted where it is shown "to a legal certainty that the plaintiff could not
recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional
minimums." *Id.* (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d at 221).
"However, in computing the jurisdictional amount, a claim for punitive damages is to be given
closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages."
*Id.* (alteration adopted, citation omitted); *see also Maciel v. BMW of N. Am.*, No. 20-CV-458,
2021 WL 983013, at *12 (E.D.N.Y. Feb. 22, 2021) ("Generally, punitive damages claims are
subjected to heightened scrutiny when they are being asserted to satisfy an amount-in-
controversy requirement.").
  The Court requested briefing regarding whether Plaintiff's allegations were sufficient to
meet the amount in controversy requirement to satisfy the MMWA claims.  (*See* Dkt. No. 87.)
In his Complaint, Plaintiff alleged that his recovery under the MMWA amounted to $36,786.58
(reflecting the price of the Vehicle, additional fees associated with its purchase, and the purchase
of two additional vehicles), as well as "no less than $90,000" in "pecuniary and compensatory
damages," "punitive damages no less than three times compensatory damages," and "incidental
and consequential damages." (*See* Compl. ¶¶ 436–8.)  In his Memorandum of Law for Summary
Judgment, Plaintiff alleged that his claims met the amount in controversy requirement because
the total cost of the Vehicle was $16,579.54; the costs of purchasing the first replacement car and

of state warranty laws." *Duchnik v. Tops Markets, LLC*, No. 22-CV-399, 2023 WL 4827951, at

*10 (W.D.N.Y. July 6, 2023) (citations omitted), *report and recommendation adopted*, No. 22-

_____

second replacement car were $7,105.04 and $13,361.43, respectively; and that his statutory claims under the NYGBL amounted to $15,000. (*See* Pl. Mem. 15.)  In response to the Court's request for additional briefing, Plaintiff appeared to also argue that he satisfied the amount in controversy requirement by alleging punitive damages, as well as a number of incidental and consequential damages. (*See* Dkt. No. 90 at 3 ("The expert opines that Plaintiff's loss of credit expectancy damages from the Inoperable Vehicle Issue are $83,051; mortgage loss damages are $26,983; loss of time damages are $5,962; additional interest expense damages (an actual out-of-pocket expense) are $2,542; loss of use of the Vehicle damages are $16,580; reduction in the value of life damages average $592,084").)

Under the MMWA, where the warrantor "breaches a 'full' written warranty, the plaintiff is entitled to a refund or replacement without charge for the defective product." *Maciel*, 2021 WL 983013, at *11.  However, where, as here, "the warrantor made only a 'limited warranty,' the MMWA requires courts to look to state law to determine the applicable measure of damages for purposes of the MMWA's amount-in-controversy inquiry." *See id*. (quoting *Pyskaty v. Wide World of Cars*, *LLC*, 856 F.3d 216, 223 (2d Cir. 2017)).

New York courts have recognized the availability of incidental and consequential damages for recovery under NY UCC § 2-315 and § 2-312. *See Pro Touch Const. Servs., LLC v. Stillwell Ready Mix, LLC*, 29 N.Y.S.3d 849 (App. Term. 2015) (noting that the plaintiff was entitled to incidental and consequential damages for breach of NY UCC § 2-315 under UCC §§ 2-714, 2-715); *Page One Auto Sales, Inc. v. Annechino*, No. 2000/13353, 2003 WL 21313291, at *3–4 (N.Y. Sup. Ct. Mar. 12, 2003) (accepting that incidental and consequential damages could be recovered for a breach of warranty of title claim); *accord Maciel*, 2021 WL 983013, at *8 (assuming, without deciding, that incidental and consequential damages could go toward the jurisdictional requirement under the MMWA).

Here, Plaintiff alleges nearly $750,000 worth of consequential and incidental damages (i.e., the cost of both replacement cars and those damages attested to by Plaintiff's damages expert).  Given that Plaintiff has adduced evidence supporting this claim and given that the Second Circuit has instructed that, when assessing the validity of the claimed recovery for jurisdictional purposes, "[i]f the right of recovery is uncertain, the doubt should be resolved . . . in favor of the subjective good faith of the plaintiff," *Pyskaty*, 856 F.3d at 229, the Court cannot say "to a legal certainty" that the jurisdictional requirement under the MMWA is not met, *see Bulgari v. Bulgari,* No. 22-CV-5072, 2023 WL 3647378, at *9 (S.D.N.Y. May 25, 2023) (concluding that the plaintiff's claims satisfied the amount in controversy requirement where the plaintiff pled "non-conclusory allegations stating a plausible claim that defendant's conduct caused specific economic harm in a quantifiable amount" (citation omitted)).

Because the Court concludes that Plaintiff has satisfied the amount in controversy requirement via incidental and consequential damages, it need not discuss Plaintiff's demand for punitive damages.

CV-399, 2023 WL 4828141 (W.D.N.Y. July 26, 2023).  As relevant here, Plaintiff asserts an MMWA claim premised on two underlying breach of warranty claims: the breach of warranty of title and breach of warranty of merchantability.  (*See* Compl. ¶¶ 398–440.)

### i.    Warranty of Title (NY UCC § 2-312)¶

NY UCC § 2-312 provides that: "there is in a contract for sale a warranty by the seller that . . . the title conveyed shall be good, and its transfer rightful."  "Section 2-312 of the N.Y. UCC establishes a warranty of good title in every contract for sale of goods."  *Antifun Ltd. T/A Premium Vape v. Wayne Indus. LLC*, 616 F. Supp. 3d 291, 311 (S.D.N.Y. 2022) (alteration adopted) (quoting *Zaretsky v. William Goldberg Diamond Corp.*, No. 14-CV-1113, 2014 WL 4160232, at *1 (S.D.N.Y. Aug. 18, 2014)).  "New York law provides 'for a buyer's basic needs in respect to a title which he in good faith expects to acquire by his purchase, namely, that he [will] receive a good, clean title transferred to him also in a rightful manner so that he will not be exposed to a lawsuit in order to protect it.'"  *Hobby Lobby Stores, Inc. v. Christie's Inc.*, 535 F. Supp. 3d 113, 121 (E.D.N.Y. 2021) (quoting NY UCC § 2-312 cmt. 1).  "Good title" is "one that is free and clear from incumbrances [sic] and encroachments."  *DW Props. v. Live Art Mkt., Inc.*, No. 23-CV-7004, 2024 WL 1718688, at *4 (S.D.N.Y. Apr. 22, 2024) (quoting *Lovell v. Jimal Holding Corp.*, 512 N.Y.S.2d 138, 138 (App. Div. 1987)).

Here, IDD appears to argue that because the Retail Purchase Agreement "did not warrant that title was passed free and clear of all liens and encumbrances," summary judgment should be granted in its favor on Plaintiff's NY UCC § 2-312 claim.  (*See* IDD Mem. 10.)  However, NY UCC § 2-312 makes clear that the warranty of title "will be excluded or modified only *by specific language* or by circumstances which give the buyer reason to know that the person selling does not claim title in himself or that he is purporting to sell only such right or title as he

or a third person may have." NY UCC § 2-312(2). The Retail Purchase Agreement referenced by Defendant does not specifically make mention of the warranty of title. (*See* IDD Mot., Ex. D ("Retail Purchase Agreement") 2–3 (Dkt. No. 63-6) (failing to mention the warranty of title).) Therefore, IDD has failed to disclaim that warranty. *See Rochester Equip. & Maint. v. Roxbury Mountain Serv., Inc.*, 891 N.Y.S.2d 781, 781–82 (App. Div. 2009) (concluding that a defendant's statement that the car was sold "as-is" was limited to "condition and operability of the vehicle," and therefore insufficient to disclaim the warranty of title); NY UCC § 2-312(2) cmt. 6 (noting that disclaimer under NY UCC § 2-312 requires "specific language"); *accord Hagerty Ins. Agency, LLC v. Luxury Asset Cap., LLC*, 536 P.3d 346, 350 (Colo. App. June 22, 2023) (noting that general disclaimers of express or implied warranties are not sufficient to exclude warranty of title under UCC § 2-312), *reh'g denied* (Aug. 10, 2023).

Plaintiff argues that the evidence establishes that IDD did not have title at the time of sale, and that therefore the Court should hold that IDD has breached the warranty of title as a matter of law. (*See* Pl. Mem. 10.) The Court agrees. Plaintiff's RFA, which has been deemed admitted because of Defendant's failure to timely respond, (*see* supra I.A. fn.5), establishes that: "[o]n the date that the Dealership sold the Vehicle to Plaintiff, the Dealership was not the title owner of the Vehicle," (*see* Pl.-IDD RFA ¶ 23). NY UCC § 2-312 provides that "title conveyed shall be good," but NY UCC § 2-403 "makes clear that a purchaser can acquire only the title which is held by the seller," *Athena Art Fin. Corp. v. Certain Artwork by Jean-Michel Basquiat Entitled Humidity, 1982*, --- F. Supp. 3d ---, 2025 WL 1533019, at *22 (S.D.N.Y. May 29, 2025). If IDD was not the title owner at the time of its sale, then it could not pass good title to Plaintiff. *See Shere v. Jonathan & Son Auto Repairs, Inc.*, 110 N.Y.S.3d 208, 208 (App. Term. 2018) (concluding that the defendant car dealership was liable under NY UCC § 2-312 where the

plaintiff established that the defendant had sold the plaintiff a vehicle that it did not have good title to); *Candela v. Port Motors Inc.*, 617 N.Y.S.2d 49, 50 (App. Div.1994) (noting that the defendant car dealership could not transfer good title to a subsequent purchaser if it had not acquired good title from the seller of a used vehicle, and therefore that the defendant would be liable under NY UCC § 2-312).  IDD's admission is therefore dispositive.  *See Arce v. Sovereign Indus. Grp. Inc.*, No. 19-CV-489, 2025 WL 102449, at *4 (E.D.N.Y. Jan. 15, 2025) (granting summary judgment where the plaintiff's failure to respond to the defendant's RFA conclusively established that "no genuine factual dispute exist[ed]"); *MS Elmsford Snack Mart, Inc.*, 2018 WL 1281829, at *7 (granting summary judgment in favor of the defendant where the plaintiff's failure to respond to an RFA left "no issues of material fact[]" to be decided at trial); *see also Moosman v. Joseph P. Blitz, Inc.*, 358 F.2d 686, 688 (2d Cir. 1966) ("It appears well settled that a failure to respond to a request to admit will permit the District Court to enter summary judgment if the facts as admitted are dispositive.").[8] Plaintiff's Motion is granted as to this claim.

### ii.    Warranty of Merchantability (NY UCC § 2-314)

NY UCC § 2-314 provides, inter alia, that in order to be merchantable, goods must be "fit for the ordinary purposes for which such goods are used." NY UCC § 2-314(2)(c)  "The inquiry

---

[8] IDD argues that Plaintiff "state[d] that he was told that IDD had applied for a duplicate title," and that this forecloses a grant of summary judgment as to his NY UCC § 2-312 claim, because "IDD would not have been able to apply and obtain a duplicate title if it never had a good title."  (IDD Opp. ¶ 4.)  Under ordinary circumstances, the fact that Plaintiff was told that IDD had applied for duplicate title could be circumstantial evidence suggesting that IDD was in fact the title owner of the vehicle at the time it was sold.  However, this circumstantial evidence cannot overcome IDD's clear and unequivocal admission that it was not the title owner at the time of the sale.  (*See* Pl.-IDD RFA ¶ 23). *See Arce*, 2025 WL 102449, at *4 ("In resolving a motion for summary judgment, 'any matter admitted under Rule 36(a) is conclusively established and may be used for summary judgment.'" (alteration adopted and internal quotation marks omitted) (quoting *Attick v. United States*, 904 F. Supp. 77, 79 (D. Conn. 1995)).

'into whether the product in question was fit for the ordinary purposes for which such goods are used . . . focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manner[].'" *Larkin v. Saber Auto., LLC*, 736 F. Supp. 3d 193, 202–03 (S.D.N.Y. 2024) (internal quotation marks omitted) (quoting *Denny v. Ford Motor Co.*, 662 N.E.2d 730, 736 (N.Y. 1995)).

In *Larkin*, the plaintiff argued that the defendant had violated NY UCC § 2-314 when it sold the plaintiff a vehicle that was not "street legal." *See Larkin*, 736 F. Supp. 3d at 203. At the summary judgment stage, the court denied both parties' cross-motions, holding that whether the car was "street legal" was a question of fact that remained unresolved by the evidence adduced on the record. *See id*. at 203. Here, unlike *Larkin*, there is no dispute that the car could not be driven legally under the circumstances evidenced in the record. After November 2, 2021, the car could no longer be driven legally on the roadways, because it was not registered. (*See* Pl.-IDD 56.1 ¶ 12, 19; IDD-Counter 56.1 ¶ 12, 19.) Given that New York law dictates that the ordinary purpose for which a car is used is transportation, *see Enobakhare v. Carpoint, LLC*, No. 08-CV-4798, 2011 WL 703920, at *9 (E.D.N.Y. Jan. 10, 2011) (noting that "a car's ordinary purpose is to enable the purchaser to transport herself upon the streets and highways" (internal citations and quotation marks omitted)), *report and recommendation adopted*, No. 08-CV-4798, 2011 WL 704902 (E.D.N.Y. Feb. 16, 2011); *Diaz v. Paragon Motors of Woodside, Inc.,* 424 F. Supp. 2d 519, 541 (E.D.N.Y. 2006) ("Under New York law, at a bare minimum the ordinary purpose for which a used car is to be used should be such as to enable the purchaser to transport herself . . . "), the Court concludes that the car was unmerchantable at the time of sale, *accord Biederman v. FCA US LLC*, 765 F. Supp. 3d 920, 950 (N.D. Cal. 2025) (concluding implied breach of merchantability claim under California statute could go forward where the plaintiffs

alleged that the vehicles were unmerchantable because their failure to comply with emissions requirements rendered them inoperable), *motion to certify appeal granted, reconsideration denied*, No. 23-CV-06640, 2025 WL 1266907 (N.D. Cal. May 1, 2025). Therefore, Plaintiff's Motion is granted as to this claim.

> b. NYGBL § 349

The Parties cross-move for summary judgment on Plaintiff's NYGBL § 349 claim. (*See* IDD Mem. 7–8; Pl. Mem. 16.) Plaintiff alleges myriad violations of NYGBL § 349:

> (i) selling to plaintiff the Vehicle knowing that it did not have good title to the Vehicle; (ii) selling to plaintiff the Vehicle knowing that it did not have the existing certificate of title to the Vehicle; (iii) selling to plaintiff the Vehicle knowing that it was not merchantable in that it would not pass without objection in the trade and was not fit for the ordinary purposes for which it was to be used; (iv) failing to provide to plaintiff a MV-50 Certificate of Sale; (v) failing to display a Buyers Guide on the Vehicle while offering the Vehicle for sale or for inspection by a consumer, in contravention of the Federal Trade Commission Used Car Rule and the MMWA; (vi) failing to provide to plaintiff a Buyers Guide for the Vehicle; (vii) failing to provide to plaintiff a New York State Lemon Law Warranty; (viii) failing to provide to plaintiff a New York State Lemon Law Bill of Rights; (ix) charging plaintiff sales tax at a rate higher than the appropriate rate, resulting in sales tax charged of $969.78; (x) charging plaintiff $175 in documentation fee but failing to submit title and registration application to the DOT; (xi) extracting from plaintiff $335 in "license and title" fee but failing to submit title and registration application to the DOT; (xii) failing to return to plaintiff his $1,102 down payment despite plaintiff's requests therefor.

(Compl. ¶ 466.) IDD moves for summary judgment as to each of Plaintiff's allegations pursuant to the NYGBL § 349. (*See* IDD Mem. 7–8.) Plaintiff moves for partial summary judgment as to allegations (ix)–(xi). (*See* Pl. Mem. 16.)

"To successfully assert a claim under [NYGBL § 349] a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Lehrman v. Lovo, Inc.*, --- F. Supp. 3d ---, 2025 WL 1902547, at *24 (S.D.N.Y. July 10, 2025) (internal

quotation marks omitted) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)). As to the first prong, courts have held that an " act or practice is consumer-oriented when it has a broader impact on consumers at large." *Manchanda v. Educ. Credit Mgmt. Corp.*, No. 19-CV-5121, 2022 WL 137885, at *3 (S.D.N.Y. Jan. 14, 2022) (quoting *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 171 N.E. 3d 1192, 1197 (N.Y. 2021)). Courts have concluded that this requirement was satisfied where "[the] plaintiffs plead repeated acts of deception directed at a broad group of individuals" or "a standard or routine practice that is consumer-oriented in the sense that it potentially affected similarly situated consumers." *Ramirez v. Wells Fargo Bank, N.A.*, No. 19-CV-5074, 2021 WL 9564023, at *12 (E.D.N.Y. Mar. 24, 2021) (alterations adopted, internal quotation marks omitted) (quoting *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 535 (E.D.N.Y. 2015) and *N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 953 N.Y.S.2d 96, 101 (App. Div. 2012)). Courts treat this latter condition as fulfilled where, for example, the alleged misrepresentation was made on a "standard form" provided to multiple customers. *See Rockefeller Univ. v. Aetna Cas. & Sur. Co.*, 217 N.Y.S.3d 562, 563 (App. Div. 2024) ("We reject defendants' argument that this action merely presents a 'private contractual dispute' between 'sophisticated parties,' and that plaintiff has failed to allege 'consumer-oriented' impact as necessary to sustain a section 349(a) claim, as the complaint alleges a standard form policy provided to multiple consumers.")); *SJN Props. LLC v. Harleysville Ins. Co.*, 738 F. Supp. 3d 405, 417 (S.D.N.Y. 2024) ("Here, [the plaintiffs] allege that [the defendant's] actions were consumer-oriented because [the defendant] routinely misapplies the [policy provisions], the [policy at issue] is a standard form policy that is part of [the defendant's] usual and customary business practices, and Defendant's alleged misconduct has a broad impact on customers at large.").

18

IDD argues that Plaintiff has failed to establish that any of IDD's alleged conduct was "consumer-oriented." (*See* IDD Mem. 8.) In response, Plaintiff points to evidence that the New York State Department of Motor Vehicles ("NY DMV") conducted an investigation into IDD for selling another consumer a vehicle without having all "the required documents necessary for registration and titling," and for failing to submit a "completed application for registration and title within five (5) calendar days of the issuance of a temporary registration." (*See* Pl.-IDD Opp. 19 (citing Kidd Decl., Ex. 24 ("Consumer Compls.") (Dkt. No. 68-24)).)[9]

That the NY DMV conducted an investigation into similar allegations against Defendant IDD provides evidence of "something more than a single-shot consumer transaction or a contract dispute unique to the parties." *Wang v. Bank of Am. Corp.*, No. 23-CV-4508, 2025 WL 1826505, at *5 (S.D.N.Y. July 2, 2025). Mindful of its obligation to "liberally construe[]" the consumer-orientation requirement, *see Lee v. UDR, Inc.*, No. 22-CV-505, 2022 WL 22211347, at *3 (S.D.N.Y. Sept. 30, 2022), the Court concludes that as to allegations relating to IDD's failure to obtain or provide title ((i)–(iii), (x)–(xi)), Plaintiff's evidence that IDD has engaged in other similar practices is sufficient to raise a triable issue of fact as to whether the consumer-orientation prong of the NYGBL § 349 is met, and therefore IDD's Motion is denied as to these

---

[9] Plaintiff also points to online reviews alleging that IDD failed to provide customers with "requisite sale documents." (*See* Consumer Compls.) However, these reviews are hearsay, and therefore the Court will not rely on them for the purposes of determining whether IDD has engaged in a consumer-oriented practice. *See Aptive Env't, LLC v. Vill. of E. Rockaway*, No. 19-CV-3365, 2019 WL 3206132, at *1 n.1 (E.D.N.Y. July 16, 2019) (noting that online reviews may not be considered for the truth of the matter asserted); *Williams v. Arctic Cat, Inc.*, No. 11-CV-445, 2014 WL 1028476, at *17 (N.D.N.Y. Mar. 13, 2014) (acknowledging that third-party reviews taken from websites or other sources would most likely be properly excluded as hearsay).

claims. *See SJN*, 738 F. Supp. 3d at 417 (concluding that the consumer-orientation prong of the NYGBL § 349 claim was sufficiently pled where the alleged breach by defendant was assertedly "routine"); *Makhnevich v. MTGLQ Invs., L.P.*, No. 19-CV-72, 2021 WL 3406484, at *8 (S.D.N.Y. Aug. 4, 2021) (concluding that the consumer-orientation prong of the NYGBL § 349 was met where the defendant's alleged conduct was "chronic" and "persistent").

However, as to claims (iv)–(ix) and (xii), the Court concludes that Plaintiff has failed to adduce any admissible evidence suggesting IDD's alleged conduct was part of a larger pattern or directed at the public more generally. (*See generally* Consumer Compls. (failing to mention any issues as to the MV-50 Certificate of Sale, Buyer's Guide, New York Lemon Law Warranty or Bill of Rights, sales tax, or return of down payment).) And unlike other cases where courts have found the consumer-oriented prong satisfied without allegations of repeated conduct, *see Rockefeller Univ.*, 217 N.Y.S.3d at 563 (affirming denial of the defendants' motion to dismiss the plaintiff's NYGBL§ 349 claim, because "the complaint alleges a standard form policy provided to multiple consumers"); *Pyskaty v. Wide World of Cars, LLC*, No. 15-CV-1600, 2019 WL 917153, at *16 (S.D.N.Y. Feb. 25, 2019) (concluding that the defendant's conduct was consumer-oriented where the scheme was advertised to the public), Plaintiff provides no admissible evidence that the alleged "misrepresentations" were part of a standard form or its equivalent. (*See generally* Pl. 56.1; Pl.-IDD Rep. 56.1; Pl.-IDD Counter 56.1.) Therefore, the Court concludes that summary judgment is appropriate as to these claims. *See Deutsche Bank Nat'l Trust Co. v. Marino*, 227 N.Y.S.3d 270, 273 (App. Div. 2025) (affirming dismissal of defendant's [NY]GBL § 349 counterclaim because she alleged "only purported actions taken against her related to her loan, not actions that were recurring and harmful to the public at large"); *Marini v. Adamo*, 812 F. Supp. 2d 243, 272 (E.D.N.Y. 2011) ("In this case, plaintiffs

20

have proffered no evidence that defendants' scheme was aimed at the public generally. For example, plaintiffs have not put forth any evidence that defendants maintained a website, circulated marketing materials, or made other efforts to make misrepresentations to the public generally, or even to a broad group of people.").

Finally, the Court denies Plaintiff's partial Motion for summary judgment as to allegations (ix)–(xi).  First, Plaintiff's Motion as to allegation (ix) is necessarily denied because Defendant's Motion as to the same claim was granted.  Second, the Court concludes that triable issues of fact as to the consumer-orientation element of allegations (x) and (xi) claim preclude summary judgment in Plaintiff's favor.  As noted above, Plaintiff has adduced evidence suggesting at least one other IDD consumer was sold a used vehicle without title.  (*See* Consumer Compls. 4–8).  A reasonable jury could conclude this evidence sufficiently supports the inference that IDD's actions were directed at "the public at large."  *See Nat'l Hockey League v. Hockey Cup LLC*, No. 18-CV-6597, 2019 WL 130576, at *8 (S.D.N.Y. Jan. 8, 2019) ("Section 349 is violated when misleading conduct is directed at the public at large." (internal citation omitted)).  However, a reasonable jury could also find that evidence of a single similar incident does not suggest the conduct was "consumer-oriented" within the meaning of the statute.  *See Stinson v. Houslanger & Assocs., PLLC*, No. 18-CV-11350, 2021 WL 4443289, at *8 (S.D.N.Y. Sept. 28, 2021) (denying summary judgment where, inter alia, there were triable issues of fact as to whether the defendant's conduct was "consumer-oriented").

For the foregoing reasons, IDD's Motion is granted in part and denied in part, and Plaintiff's Motion is denied.

c. Conversion

IDD also seeks summary judgment as to Plaintiff's conversion claim. (*See* IDD Mem. 10–11.) Plaintiff alleges that IDD is liable for conversion for failing to return Plaintiff's down payment after he requested its return. (*See* Compl. ¶¶ 484–495.) A successful claim for conversion requires: "(1) intent; (2) interference with [the plaintiff's] property rights to the exclusion of his rights; and (3) possession or the right to possession." *OL USA LLC v. Maersk A/S*, 730 F. Supp. 3d 66, 71 n.4 (S.D.N.Y. 2024) (citation omitted). "[C]onversion of money occurs when funds designated for a particular purpose are used for an unauthorized purpose." *Busrel Inc. v. Dotton*, No. 20-CV-1767, 2025 WL 814775, at *6 (W.D.N.Y. Mar. 13, 2025) (alterations adopted) (quoting *Lemle v. Lemle*, 939 N.Y.S.2d 15, 18 (App. Div. 2012)).

IDD appears to argue that summary judgment is appropriate as to Plaintiff's conversion claim because there is no evidence that IDD used the down payment for an "unauthorized purpose." (*See* IDD Mem. 10–11.) The Court agrees. Although there is little case law clarifying the meaning of "unauthorized purpose" of funds, cases typically involve a defendant's appropriation of funds set aside for one use—such as for a retainer, or in escrow, or in an investment account—for purposes for which the funds were not designated. *See, e.g., Busrel Inc.*, 2025 WL 814775, at *7 (granting default judgment on the plaintiff's conversion claim where the defendant had taken funds appropriated for the purchase of PPE and used them to unlawfully benefit a third-party); *Columbo v. Philips Bryant Park LLC*, No. 22-CV-775, 2024 WL 1138942, at *7 (S.D.N.Y. Mar. 15, 2024) (denying motion to dismiss the plaintiff's conversion claim where the defendant removed funds from the plaintiff's retirement fund and used them to pay for unrelated expenses), *reconsideration denied*, No. 22-CV-775, 2024 WL 3227090 (S.D.N.Y. June 28, 2024); *Lemle*, 939 N.Y.S.2d at 18–19 (concluding that a claim for

22

conversion was sufficiently stated where the plaintiff alleged that the defendants "(1) falsified loan documents so as to eliminate millions of dollars in principal and interest they owed to the corporation; (2) used corporate funds to pay for personal vacation, shopping and other non-business-related expenses; and (3) used corporate funds to pay excessive compensation and benefits to themselves and other individuals who did little or no work for the corporation").

Here, there is no evidence suggesting the down payment was "designated for a particular purpose" akin to funds held in escrow or in an investment account, and consequently, there is no evidence that the contested funds were ever used for an unauthorized purpose. (*See generally* IDD 56.1; Pl.-IDD Counter 56.1.) Therefore, Plaintiff has failed to establish a triable issue of fact on this claim, and IDD's summary judgment Motion is granted. *See Orlando v. Nxt-ID Inc.*, No. 20-CV-1604, 2021 WL 1143766, at *6 (S.D.N.Y. Mar. 23, 2021) (dismissing conversion action where there was no evidence that funds were "designated for a particular purpose" and used in an "unauthorized manner"); *Freedom Holding, Inc. v. Haart*, 172 N.Y.S.3d 873, 884 (Sup. Ct. 2022) (dismissing a conversion claim where there were no sufficient allegations suggesting that the funds were "held in escrow . . . or for any specific purpose.").

### d. Fraud

IDD moves for summary judgment on Plaintiff's common law fraud claim. (*See* IDD Mem. 8–9.) For the following reasons, the Court denies the Motion.

Under New York law, the elements of common law fraud are: "(1) a material misrepresentation of a fact, (2) knowledge of its falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff and (5) damages." *Saniteq, LLC v. GE Infrastructure Sensing, Inc.*, No. 17-CV-771, 2018 WL 4522107, at *13 (E.D.N.Y. July 12, 2018) (quoting *Jones v. E. Brooklyn Sec. Servs. Corp.*, No. 11-CV-1021, 2012 WL 3235784 (E.D.N.Y. Aug. 7, 2012)),

*report and recommendation adopted*, No. 17-CV-771, 2018 WL 4357475 (E.D.N.Y. Sept. 13, 2018).

IDD appears to argue that because the agreement at issue "constitutes an enforceable contract," a fraud claim cannot be brought against it. (*See* IDD Rep. 8–9.) It is no doubt true that "'when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual' and cannot be repackaged as tort claims." *DM Manager LLC v. Fid. Nat'l Info. Servs., Inc.*, No. 23-CV-617, 2024 WL 1347724, at *5 (S.D.N.Y. Mar. 29, 2024) (quoting *Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011) (summary order)), *aff'd*, No. 24-1217, 2025 WL 863338 (2d Cir. Mar. 19, 2025) (summary order). However, even where the nature of the dispute is contractual, courts have permitted a fraud claim to survive where a plaintiff can "(i) demonstrate a legal duty separate from the duty to perform under the contract, or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) [is seeking] special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Id.* (citation omitted); *see also 6340 NB LLC v. Cap. One N.A.*, No. 20-CV-2500, 2024 WL 4100184, at *6 (E.D.N.Y. Sept. 5, 2024) (applying the same standard and quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)).

The Court concludes that the record raises triable issues of fact as to whether the second exception applies.[10] Courts have repeatedly held that "New York law specifically recognizes causes of action for fraud in the inducement when the misrepresentation is collateral to the

---

[10] Because the Court determines the second exception applies, it need not address the first and third exceptions.

contract it induced." *Larkin,* 736 F. Supp. 3d at 206 (quoting *Wall v. CSX Transp., Inc.*, 471

F.3d 410, 416 (2d Cir. 2006)).  And courts have allowed fraudulent inducement claims to

proceed where "the fraudulent representation which forms the basis of [the plaintiff's complaint

is] not specifically contradicted by any of the detailed representations or warranties contained in

the agreement." *Hobart v. Schuler*, 434 N.E.2d 715, 716 (N.Y. 1982); *see also Wall*, 471 F.3d at

417 (denying a motion to dismiss a fraud claim where the challenged misrepresentation was not

explicitly captured in the contract terms); *Larkin*, 736 F. Supp. 3d at 206 (denying summary

judgment where the fraudulent statements were not specifically contradicted by the contract

terms).  Here, as noted above, the Retail Purchase Agreement does not explicitly address the

issue of title.  (*See* supra II.B.1.a.ii.)  Accordingly, the purported "fraudulent representation" is

not "specifically contradicted" by the contract, and therefore the existence of the contract does

not preclude Plaintiff's fraud claim.  *Hobart*,  434 N.E.2d at 716 ; *Wall*, 471 F.3d at 417; *Larkin*,

736 F. Supp. 3d at 206 (rejecting the defendant's contention that the "purported

misrepresentations" could not support a fraud claim because they "[bore] on the basic contract

terms" where the defendant could not "identif[y] any contract terms that address[ed] the

misrepresentations" (alteration adopted)).

As to the substantive elements of fraud, IDD disputes that scienter has been adequately

demonstrated.  (*See* IDD Mem. 9.)  But scienter is classically a question for the jury.  *See Larkin*,

736 F. Supp. 3d at 206 ("Saber also argues that there is no evidence that it knew its statements

were false. Yet scienter is a quintessential jury question"); *Pyskaty*, 2019 WL 917153, at \*14

("Findings of fraudulent intent and reasonable reliance are often fact-specific inquiries left for a

jury to decide."); *Clarke v. Max Advisors, LLC*, 235 F. Supp. 2d 130, 143 (N.D.N.Y. 2002) ("[I]t

is . . . well established that questions concerning a party's intent ordinarily present issues of

25

fact." (citing *Kahuna Group, Inc. v. Scarano Boat Building, Inc.*, 984 F.Supp. 109, 114–15 (N.D.N.Y. 1997) and *Goshen Litho, Inc. v. Kohls*, 582 F. Supp. 1561, 1564 (S.D.N.Y. 1983)).

Therefore, these arguments by IDD are unavailing, and its summary judgment motion as to Plaintiff's fraud claim is denied.

### e. Unjust Enrichment

IDD also raises a challenge to Plaintiff's unjust enrichment claim, arguing that because the Parties were in privity, the proper recourse would be for Plaintiff to bring a breach of contract claim. (*See* IDD Mem. 11.)  Plaintiff does not respond to this argument, and instead simply restates the elements of unjust enrichment in his Opposition. (*See* Pl.-IDD Opp. 20.)

It is axiomatic that "a claim for unjust enrichment will not lie if the parties have a contract." *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 642 (S.D.N.Y. 2020).  Here, the basis of the dispute (the purchase of the Vehicle) is governed by a contract. (*See* Retail Purchase Agreement.)  Therefore, existence of the contract between the Parties precludes Plaintiff's unjust enrichment claim, and IDD's Motion is granted. *See Ahmed v. Cigna Health Mgmt., Inc.*, No. 23-CV-8094, 2024 WL 3345819, at *6 (S.D.N.Y. July 8, 2024) ("The [court] agrees that the existence of a contract precludes [the plaintiff's] unjust-enrichment claim"); *Stifel, Nicolaus & Co. v. Shift Techs., Inc.*, No. 21-CV-4135, 2022 WL 3648145, at *6 (S.D.N.Y. Aug. 23, 2022) (declaring an unjust enrichment claim barred where the underlying dispute was governed by an existing contract).

### 2. AHFCU

In its summary judgment motion, AHFCU challenges the viability of each of Plaintiff's claims against it. (*See generally* AHFCU Mem.)  For the following reasons, AHFCU's Motion is granted in part and denied in part.

a.  UTPCPL 73 P.S. § 201-1, *et seq.*

Plaintiff raises various alleged actions by AHFCU that he argues violated UTPCPL 73

P.S. § 201-2(4)(xxi), or the UTPCPL's catchall provision, specifically:

> (i) failing to credit to plaintiff's loan balance any portion of the purchase price refunded to AHFCU after the cancellation of the extended warranty; (ii) failing to credit to plaintiff's loan balance any portion of the purchase price refunded to AHFCU after the cancellation of the GAP; (iii) informing plaintiff that the total sale price of the Vehicle was $12,500 when the total sale price was in fact $16,579.54; (iv) informing plaintiff that the only way the loan works is if AHFCU receives payments by ACH automatic payments directly from his deposit account and that he could not make onetime payments as the payments fall due; (v) informing plaintiff that AHFCU would charge a late charge if plaintiff's loan payment was 15 days or more delinquent; (vi) charging plaintiff a late charge when plaintiff's loan payment was 15 days delinquent; (vii) informing plaintiff that he had to continue to pay the loan despite the Vehicle being inoperable and that there was nothing AHFCU could do to help him obtain the title to the Vehicle so that he could obtain the registration and license, or to release him from the loan obligation; and (viii) after knowing plaintiff could not lawfully operate the Vehicle for want of registration and license, reporting its loan to the consumer reporting agencies first as late, then as a repossession and then as charged-off, thereby destroying plaintiff's credit score from a high of no less than 788 to a low of 601 or less, causing plaintiff to be denied credit opportunities.

(*See* Compl. ¶ 509.)  Defendant argues that each of these allegations is either (i) factually false or

(ii) fails to state a claim under the UTPCPL.  (*See* AHFCU Mem. 11.)

"The UTPCPL is a Pennsylvania statute that applies to 'unfair or deceptive acts or

practices in the conduct of any trade or commerce.'"  *Francis v. Humana, Inc.*, No. 24-CV-2017,

2025 WL 365687, at *4 (M.D. Pa. Jan. 31, 2025) (quoting 73 P.S. § 201-3(a)).  The statute "'is

to be liberally construed to effectuate its objective of protecting the consumers of Pennsylvania

from fraud and unfair or deceptive business practices."  *Id.* (alterations adopted) (quoting *Ash v.*

*Cont'l Ins. Co.*, 932 A.2d 877, 881 (Pa. 2007)).  To recover under the UTPCPL, a plaintiff is

required to show: "(1) a deceptive act that is likely to deceive a consumer acting reasonably

under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable

reliance caused ascertainable loss." *Id.* (quoting *Slapikas v. First Am. Title Ins. Co.*, 298 F.R.D. 285, 292 (W.D. Pa. 2014). Here, Plaintiff brings his claims pursuant to the "catchall" provision of the statute, which prohibits "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *Ewideh v. Kohl's Dep't Stores Carlisle Pennsylvania*, No. 20-CV-2342, 2022 WL 2181235, at *5 (M.D. Pa. Feb. 4, 2022) (alterations adopted) (quoting 73 P.S. § 201-2(4)(xxi)), *report and recommendation adopted*, No. 20-CV-2342, 2022 WL 1618530 (M.D. Pa. May 23, 2022).

As to Plaintiff's allegations (i) and (ii)—relating to the refund of the purchase price for the extended warranty and the GAP—the Court concludes that the existence of material disputes of fact renders summary judgment inappropriate. Specifically, both the extended warranty and the GAP warranty agreements note that a full refund is appropriate where the buyer cancels the warranty within 60 days of purchase. (*See* AHFCU Mem., Ex. H ("Vehicle Service Contract") 15 (Dkt. No. 62-10); AHFCU Mem., Ex. I ("GAP") 2 (Dkt. No. 62-11).) Plaintiff entered into the loan agreement with AHFCU on October 7, 2021, (*see* AHFCU Mem., Ex. M ("Loan Agreement") 6 (Dkt. No. 62-15)), and Plaintiff alleges that he requested an unwinding of his contractual obligations to AFHCU on December 1, 2021, (*see* First Ramriez Decl. ¶ 110). If Plaintiff's account is to be believed, he requested cancellation of the contracts less than 60 days after he entered into the agreement. This evidence creates a triable issue of fact as to AHFCU's deceptive behavior, and therefore the Court denies AHFCU's Motion as to this allegation. *See McMahon v. Chipotle Mexican Grill, Inc.*, No. 24-1883, 2025 WL 1604501, at *5 (3d Cir. June 6, 2025) (reversing district court's grant of summary judgment in favor of defendant where there was a factual dispute as to whether the defendant engaged in the deceptive practice); *Tanenbaum v. Chase Home Fin. LLC*, No. 13-CV-4132, 2014 WL 4063358, at *5 (E.D. Pa. Aug. 18, 2014)

28

(concluding summary judgment was "inappropriate" because "[t]here is a factual dispute regarding whether [the defendant] engaged in 'other fraudulent or deceptive conduct' as required by the UTCPCL's catch-all.")

As to allegation (iii)—that AHFCU told Plaintiff that the total sale price of the Vehicle was $12,500 when the total sale price was in fact $16,579.54—AHFCU argues that it never represented that the total sale price was $16,579.54, and in fact that it accurately represented the full price of the loan, $15,477.54.  (*See* Loan Agreement 2.)  Plaintiff fails to respond to this argument in his Opposition.  (*See generally* Pl.-AHFCU Opp.)  Therefore, the Court deems it abandoned, and grants AHFCU's Motion on this issue.  *See Kristoffersson ex rel. R.R. v. Port Jefferson Union Free Sch. Dist.*, No. 22-CV-1741, 2023 WL 6119710, at *6 n.3 (E.D.N.Y. Sept. 18, 2023) ("Plaintiff does not respond to Defendants' argument in [his] opposition brief, so the Court deems this claim abandoned"), *aff'd*, No. 23-7232, 2024 WL 3385137 (2d Cir. July 12, 2024) (summary order); *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *Rohn Padmore, Inc. v. LC Play Inc.*, 679 F. Supp. 2d 454, 459 (S.D.N.Y. 2010) ("Where one party fails to respond to an opposing party's argument that its claim must be dismissed, courts may exercise their discretion and deem the claim abandoned." (citation omitted)).

The Court concludes that genuine issues of fact preclude summary judgment as to allegation (iv)—that AHFCU told Plaintiff that automatic payments were required as part of the loan agreement.  Plaintiff avers he was told automatic payments were required when he entered the loan agreement, (*see* First Ramirez Decl. ¶¶ 35–36), when in fact AHFCU does not require automatic payments, (*see* AHFCU Rep. 5–6.).  AHFCU denies that it maintains such a policy or

made such a representation to Plaintiff.  (*See id.*)  This dispute of fact precludes summary judgment in AHFCU's favor, and therefore the Court denies AHFCU's Motion as to this allegation.  *Gulla v. Howard Hanna Co.*, No. 814-WDA-2017, 2018 WL 4474439, *8–9 (Pa. Super. Ct. Sept. 19, 2018) (on appeal, precluding entry of summary judgment for defendant on plaintiff's claim where there were triable issues of fact regarding defendant's deceptive behavior); *Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 549 (E.D. Pa. 2012) (denying the defendant's motion for summary judgment on plaintiff's UTPCPL claim where the plaintiff's testimony created a genuine dispute of material fact as to whether he was in fact deceived).

As to the allegations regarding AHFCU's representations about when late fees would be imposed after 15 days of non-payment, rather than 16 days (as Pennsylvania law requires), the Court agrees with AHFCU that Plaintiff has not adequately demonstrated that he relied upon AHFCU's statements to that effect, because there is no indication that he ever planned to pay his monthly bill from AHFCU.  (*See* AHFCU Rep. 6 ("Plaintiff was always going to be charged the late fee because he never planned on making the December payment.")).  The record suggests that Plaintiff never made any payments after November 2021, and therefore that he would have been charged a late fee regardless of when that late fee was applied to his account.  (*See* First Ramirez Decl. ¶¶ 150–156; *see also* AHFCU Mem. 8–9; Pl.-AHFCU Rep. 56.1 at 5 (agreeing that the last payment Ramirez made was in November 2021).)  It follows that regardless of whether Plaintiff had been charged a late fee on the 15th or 16th day after nonpayment, he would have failed to pay.  Therefore, Plaintiff has not demonstrated reliance on the allegedly deceptive statement, and this claim fails.  *See Winslow v. Extra Storage Space*, No. 23-CV-4930, 2025 WL 1592944, at *7 (E.D. Pa. June 5, 2025) ("While whether justifiable reliance existed is ordinarily a question of fact, courts will decide the issue during summary judgment where a [p]laintiff fails

to present a genuine issue of material fact."); *Golubiewski v. Activehours, Inc.*, No. 22-CV-2078, 2024 WL 4204272, *5 (M.D. Pa. Sept. 16, 2024) (granting motion to dismiss a plaintiff's UTPCPL claim where "[the p]laintiffs [had] not alleged that if not for the alleged misrepresentations, [they] would have acted differently").

Finally, as to allegations (vii) and (viii), the Court concludes that there was no actionable misrepresentation or omission.  AHFCU represented to Plaintiff that it would not rescind the loan agreement, (*see, e.g,* First Ramirez Decl. ¶¶ 152–153; AHFCU Mem. 8), and the evidence in the record suggests that it did not have a policy of rescinding loan agreements when the vehicle was inoperable, (*see* AHFCU Not. of Mot., Ex. F. ("Eichenbaum Dep.") 160:14–162:15 (noting, inter alia, that the obligation to repay the loan was independent of the car's operability) (Dkt. No. 62-8); AHFCU Not. of Mot., Ex. C. ("Hutchins Dep.") 65:11–21 ("Q: Was it a part of the policy of the collections department to allow the member to suspend payments on the loan until the lack of title was rectified? A: No.") (Dkt. No. 62-5)).  There is no evidence in the record that AHFCU misrepresented its policy or omitted critical policy information, and therefore as to this allegation, Plaintiff has failed to adduce evidence of a deceptive act within the meaning of the UTPCPL.  *See Dukich v. IKEA US Retail LLC*, No. 20-CV-2182, 2022 WL 4237485, at *4–5 (E.D. Pa. Sept. 13, 2022) (granting defendant's summary judgment motion as to plaintiff's UTPCPL claim where "[the defendant] made no misleading or deceptive statements"); *Levy-Tatum v. Navient & Sallie Mae Bank*, No. 15-CV-3794, 2016 WL 75231, at *11 (E.D. Pa. Jan. 7, 2016) (concluding that a defendant had been "exquisitely clear" about its policies, and noting that the plaintiff's beliefs that the defendant's policies were "unfair[] or burdensome" did not render them "deceptive or misleading within the meaning of the UTPCPL"); *accord Costa v. Whirlpool Corp.*, No. 24-CV-188, 2025 WL 885245, at *4 (D. Del. Mar. 21, 2025) (dismissing

the plaintiff's unfair or deceptive act claims based on challenged statements that were "simply not false"), *re-argument denied*, No. 24-CV-188, 2025 WL 1433935 (D. Del. May 19, 2025).

\* \* \*

For the foregoing reasons, the Court grants AHFCU's Motion as to allegations (iii) and (v)–(viii).  However, the Court concludes that material issues of fact preclude granting AHFCU's Motion as to allegations (i)–(ii) and (iv).

### b.  Declaratory Relief

Finally, AHFCU moves for summary judgment on Plaintiff's claim under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.  (*See* AHFCU Mem. 17–19.)  The Declaratory Judgment Act permits courts to "declare the rights and other legal relations of any interested party seeking such a declaration"  "[i]n a case of actual controversy."  28 U.S.C. § 2201(a).  "The Declaratory Judgment Act is 'procedural only . . . and does not create an independent cause of action.'"  *Santander Consumer USA, Inc. v. City of Yonkers*, No. 22-CV-8870, 2024 WL 4817649, at \*13 (S.D.N.Y. Nov. 18, 2024) (quoting *Chevron Corp v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) (citations and quotation marks omitted)).

District courts possess "broad discretion not to entertain an action for declaratory relief." *Gem Yield Bahamas Ltd. v. Realpha Tech Corp.*, No. 25-CV-2271, 2025 WL 2419724, at \*3 (S.D.N.Y. Aug. 21, 2025) (internal quotation marks omitted).  "The factors pertinent to this exercise of discretion are '(1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly

encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.'" *Id*. (citing *Admiral Ins. Co. v. Niagara Transformer Corp*., 57 F.4th 85, 99–100 (2d Cir. 2023) (cleaned up)). Because the Court concludes below that Plaintiff's claims fail on the merits, it need not engage in this multi-pronged analysis.

In his Complaint, Plaintiff appears to request declaratory relief from his contractual obligations to AHFCU on two grounds: the doctrine of frustration of purpose and fraud. (*See* Compl. ¶ 517(a)–(b).) Under Pennsylvania law, "[a] party may avoid its performance on a contract under the defense of frustration of purpose [] where 'after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made.'" *IMAX Corp. v. Cap. Ctr.*, 156 F. Supp. 3d 569, 576 (M.D. Pa. 2016) (quoting *Ragnar Benson, Inc. v. Hempfield Twp. Mun. Auth.*, 916 A.2d 1183, 1190 (Pa. Super. Ct. 2007) (quoting Restatement (Second) of Contracts § 261))). This defense to enforcement "can also result, however, from a condition existing at the time of the contract's formation." *Murray v. Willistown Twp*., 169 A.3d 84, 93 (Pa. Sup. Ct. 2017) (noting that "Section 266 of the Second Restatement, which has not been discussed in any reported Pennsylvania appellate decision, states that such an impracticability excuses performance of a contractual obligation if the obligor had no reason to know of it and the condition was not the obligor's fault.").

AHFCU appears to argue that the central purpose of the contract (the loan agreement) was to permit Plaintiff's purchase of the car, and therefore the operability of the car was not a "basic assumption on which the contract was made." (*See* AHFCU Mem. 18.) The Court agrees. In a similar case, *Atiyeh v. Am. Bus. Bank*, No. 25-CV-62, 2025 WL 1090322 (C.D. Cal.

Feb. 24, 2025), a district court concluded that a frustration of purpose defense did not apply to a contract between a contract between a loan servicer and borrowers. *Id*. at *3. The borrowers had been loaned the money to start a dog daycare and training center but were unable to do so because they had been "wrongfully evicted from their lease." *Id*. at *2. The court nonetheless concluded that the frustration of purpose doctrine did not apply because the central purpose of the contract "was for [the defendant] to provide [the plaintiff with] 'working capital,' and, in return, [the plaintiff] agreed to pay the borrowed money back to [the defendant] with interest." *Id*. at *3. The Court concludes this logic is persuasive. The contract at issue is between AHFCU, a lender, and Plaintiff, a borrower. Just as in *Atiyeh*, its purpose was to provide Plaintiff with capital to purchase the Vehicle. Thus, just as in *Atiyeh*, the frustration of purpose doctrine is inapplicable, and AHFCU's motion is granted. *See id*; *accord PraultShell, Inc. v. River City Bank*, 880 S.E.2d 616, 620 (Ga. Ct. App. 2022) ("Assuming, without deciding, that it was 'impossible' to continue to operate the brew pub and restaurant for the reasons alleged, it does not necessarily follow that it was 'impossible' for the appellants to have repaid their indebtedness.").

AHFCU also raises a challenge to Plaintiff's declaratory judgment claim on the basis of fraud. (*See* AHFCU Mem. 18.) "A fraud in the inducement claim asserts that 'an opposing party made false representations that induced the complaining party to agree to the contract.'" *Klein v. Gladstone*, No. 1808 WDA 2018, 2020 WL 86557, at *6 (Pa. Super. Ct. Jan. 7, 2020) (quoting *Toy v. Metro. Life Ins. Co*., 928 A.2d 186, 205 (Pa. 2007)). "The elements of fraud in the inducement are as follows: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the

34

misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Corle Bldg. Sys., Inc. v. Ogden Welding Sys., Inc.*, 684 F. Supp. 3d 390, 405 (W.D. Pa. 2023) (quoting *Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1185 (Pa. Super. Ct. 2005) (quotation marks omitted)).

The Court agrees that Plaintiff has failed to state a valid contract defense of fraud in the inducement.  As noted above, (*see* supra II.2.a.), Plaintiff does not allege that AHFCU made any representation or omission with respect to the title to the vehicle, and there is no evidence AHFCU had any information regarding the title of the Vehicle at the time of contracting.  (*See generally* AHFCU Mem. 6–10; Pl–AHFCU Counter 56.1.)  Therefore, summary judgment is appropriate as to this claim.  *See Smith v. Sweden Valley, LLC*, No. 14-CV-1617, 2015 WL 12669894, at *7 (M.D. Pa. June 19, 2015) (granting summary judgment to defendant on plaintiff's fraudulent inducement claim where there was no evidence that that the defendant had made any false statement or made any omission with the intent to mislead), *report and recommendation adopted*, No. 14-CV-1617, 2015 WL 12696087 (M.D. Pa. Sept. 23, 2015), *aff'd*, 633 F. App'x 94 (3d Cir. 2016); *Harrison v. Cabot Oil & Gas Corp.*, 887 F. Supp. 2d 588, 593–94 (M.D. Pa. 2012) (granting summary judgment to the defendant on the plaintiff's fraudulent inducement claim where the plaintiff had not demonstrated any fraudulent statement or omission), *aff'd*, 608 F. App'x 128 (3d Cir. 2015).

### III.  Conclusion

In sum, Plaintiff's Motion for Partial Summary Judgment is granted as to its claims pursuant to NY UCC § 2-312 and § 2-314 and denied as to the NYGBL § 349 claim.  IDD's Motion is granted as to allegations (iv)–(ix) and (xii) of Plaintiff's NYGBL § 349, conversion, and unjust enrichment claims.  IDD's Motion is otherwise denied.  As for AHFCU's Motion, the

Court denies the Motion insofar as it seeks dismissal of allegations (i), (ii), (iv) of Plaintiff's UTPCPL claim, but grants the Motion as to all other claims.

"Because genuine issues of fact as to liability, as described above, remain to be determined at trial, the court defers the determination of damages until all such issues have been resolved at trial." *Microsoft Corp. v. Hilaire*, No. 06-CV-361, 2008 WL 11486696, at *5 (D. Conn. Mar. 17, 2008); *see also Hernandez v. Sikka*, No. 17-CV-4792, 2020 WL 1083706, at *13 (E.D.N.Y. Mar. 6, 2020) ("While summary judgment has been granted in Plaintiffs' favor on several claims, others remain to be decided at trial. Determination of damages is deferred pending resolution of the remaining claims.").

The Court will hold a status conference on October 29, 2025 at 11 AM. The Clerk of Court is respectfully directed to close the pending motions (Dkt. Nos. 62, 63, 64.)

SO ORDERED.

Dated:  December 4, 2025
        White Plains, New York

KENNETH M. KARAS
United States District Judge